KENNEDY v. MISSOURI, K. & T. RY. CO. OF TEXAS.    (No. 7662.)

(Court of Civil Appeals of Texas. Dallas. Feb. 10, 1917. Rehearing Denied March 17, 1917.)

1. APPEAL AND ERROR ☞1058(2)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In an action by railroad employé for injuries from sudden lurching of train upon defective track, error in excluding plaintiff's testimony that he could tell from the movement of the train that there was a defect in the track was harmless, where he had already stated that he thought there was a defect in the track, and his other testimony was such that the excluded testimony would have added nothing to the force of what he had already testified to.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201.]

2. EVIDENCE ☞129(1)—SIMILAR FACTS—MISSTATEMENT OF AGE.

In an action by a railroad servant for injuries, where on cross-examination plaintiff was questioned as to having stated his age incorrectly in an application for employment, it was proper to exclude his testimony as to what other men customarily did in such circumstances.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388, 389.]

3. APPEAL AND ERROR ☞1057(1)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In action by servant for injuries, in which plaintiff's killing of his brother-in-law was a collateral issue, the exclusion of plaintiff's testimony that he went to his brother-in-law's home to get the latter's wife to get him off the street while drunk, and that the brother-in-law was a desperado, was harmless where other evidence by plaintiff showed he had acted in self-defense.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4194–4196.]

4. APPEAL AND ERROR ☞1057(1)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In action by servant for injuries, exclusion of his testimony as to why after being injured he did not complain thereof, the reason being he was afraid he would lose his job, was not reversible error, where one of his witnesses testified that plaintiff told him of his injury on the day when received, and plaintiff testified that some time thereafter he went to a doctor, and when the latter told plaintiff of the nature of such injury, plaintiff could not believe it, because he knew nothing about it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4194–4196.]

5. APPEAL AND ERROR ☞1058(2)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In action by a servant for injury, refusal to permit plaintiff's witness to answer the question whether plaintiff did not tell him he did not think the injury was serious, which answer was expected to be in the affirmative, was, if error, immaterial, in view of other testimony of the same witness that plaintiff was talking about another injury and knew nothing about the injury complained of.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201.]

6. APPEAL AND ERROR ☞692(1) — BILL OF EXCEPTION — EXCLUSION OF ANSWER TO QUESTION.

The refusal to allow answer to a proposed question cannot be considered on appeal, where the bill of exceptions does not show what the answer would have been to the question, since no injury is shown to appellant by such ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905, 2906.]

Error from District Court, Hunt County; Wm. Pierson, Judge.

Action by J. E. Kennedy against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for defendant, and plaintiff brings error. Affirmed.

B. Q. Evans and H. L. Carpenter, both of Greenville, for plaintiff in error. C. C. Huff, of Dallas, and Dinsmore, McMahan & Dinsmore, of Greenville, for defendant in error.

RAINEY, C. J. Plaintiff sued to recover of defendant damages for personal injuries to him while employed by appellee as a fireman of an engine in operating a ditcher, while said ditcher was being transported from Greenville to Mineola on its own road; that while he was reaching up to procure some waste to start a fire in said ditcher the train, while going over a defective track, made a sudden lurch which caused plaintiff to fall over a bar which produced hernia and otherwise injured him.

Defendant answered by general demurrer and general denial. A trial resulted before a jury in a verdict and judgment for defendant, from which appeal is taken.

The evidence pro and con was introduced, and the assignments of error presented all relate to the admission and rejection of certain evidence.

[1] The first is that the court erred in refusing to allow plaintiff to testify "that he could tell from the movement of the train when the car went down that he was on that there was a defect in the track at that point." The plaintiff was an experienced railroad man, and was competent to answer the question propounded, but he had already stated that he thought there was a defect in the track, and his testimony in regard to the lurching of the car, and his testimony after going over the track and examining the point where he claimed to be hurt was such that his answer would have added nothing to the force of what he had already testified to, and therefore the error is harmless, and not reversible.

[2] The second assignment relates to the exclusion of testimony of plaintiff on redirect examination as follows:

"Q. What was it you said about it being customary for all men to do that went into service? A. The reason I done it, the railroad company, if you are past a certain age, won't take you sometimes, and you have got to make your age younger, as all of them do."

Objection was made to that part of the answer which read "as all of them do." The court sustained the objection and told the jury not to consider it. The witness was being questioned about his age, he having stated on cross-examination that when he made application for employment to defendant he had stated he was born in February, 1885, when in fact he was born in 1879, and further:

"I put my age down at that time in making the application to the railroad company the same as all other men do."

He had on cross-examination testified without objection to the same effect, and if the effect of the court's ruling was to exclude the testimony in each instance, there was no error, because he stated, in effect, his reason to be that he would be more apt to secure employment by placing his age younger than he really was. What other men did in such cases was no excuse for him doing it, and was therefore immaterial, and not admissible. The court did not err in its ruling.

The third assignment of error relates to the admission of testimony of plaintiff "that he shot to death his own brother-in-law on the streets of Coalgate, Okl.," and, further, that the court erred in refusing to permit plaintiff to answer the following question:

"I will ask you if you didn't beg him (meaning Baldy Bunch) to put up his pistol and go home?"

This assignment does not cite the bill of exception nor page of the record where it can be found. We have found no such bill, and therefore cannot pass upon it intelligently.

[3] With the third assignment was grouped the fourth, fifth, and sixth assignments, and which are submitted together. The fourth complains of the refusal of the court to allow plaintiff to answer the following question:

"Q. I will ask you if you did not go to his home (meaning Baldy Bunch) that morning and get his wife to go after him and asked her to get him and get him off the streets?"

The fifth assignment complains of the court in not allowing plaintiff to testify:

"That Baldy Bunch was considered a desperado and that his general reputation in that community was that of a desperado."

The sixth assignment complains of the court in not permitting plaintiff to answer this question:

"Q. I will ask you if while you were on the streets, you and the city marshal, in the performance of your duty as officers there, if this man while drunk didn't pull his pistol and open fire on you and the city marshal?"

Under these assignments plaintiff submits the following proposition:

"The plaintiff on cross-examination by the defendant's counsel being required to testify before the jury as follows: 'I don't know that I went to the penitentiary for killing my brother-in-law. Me and the city marshal was charged and convicted of killing my brother-in-law and given 6½ years.' It was admissible on redirect examination to show in explanation of his conduct with and connection with the killing of his brother-in-law that plaintiff was constable of Coalgate, and this his brother-in-law, Baldy

Bunch, was drunk, had his pistol out, and that he went to him and begged him to put up his pistol and go home, and when he wouldn't do it he went to his brother-in-law's home and got his wife to go after him and begged her to get him to go home off the streets; that Bunch was considered a desperado; that was his general reputation; and that, being drunk and having his pistol, he opened fire on plaintiff and the city marshal, and when the shooting was over he was lying on the ground dead or dying, and the plaintiff and the city marshal turned and walked to the sheriff and gave themselves up."

The matter to which the grouped assignments relate, the killing of one Baldy Bunch at Coalgate, Okl., was a collateral issue in this case. From the statement of facts we find that on direct examination by his counsel plaintiff in the beginning of his testimony after giving his name, stated:

"I have not my pardon [from the penitentiary] with me; it is down at the house. * * * When I lived in Oklahoma I was hoisting engineer at the 'Katy' mines. I was elected constable of Coalgate in 1907, when Oklahoma came into statehood, and was constable about two years and resigned. It was in July, 1909, when I had that trial there. I was constable at the time this difficulty came .up; the .city marshal and I were together. No, sir; I didn't get away or skip out."

On redirect examination plaintiff testified:

"Yes, sir; and when I was constable at Coalgate it is true that Baldy Bunch was drunk and had his pistol out in the street, and he opened fire on me and the city marshal. It was in this shooting scrape he was killed. When the shooting was over he was lying on the ground dead or dying, and me and the city marshal turned and walked to the sheriff and give up."

The testimony of plaintiff that he went to the home of Baldy Bunch to get Bunch's wife to get him off the street, and that Bunch was a desperado, became immaterial in view of the fact that the evidence shows in relation to the killing that plaintiff acted in self-defense. While under sentence he never was confined in the penitentiary, but was out on parole and was finally pardoned by the Governor of Oklahoma. Under the circumstances the rulings of the court were not injurious to plaintiff, and the assignments are overruled.

[4] The seventh assignment of error complains of the action of the court in not letting plaintiff testify why, after being injured, he did not say anything to the crew with whom he was working about being injured; the reason being he was afraid he would lose his job with the railroad company. Bullard, a witness for plaintiff, testified that plaintiff told him of his injury on the same day of the injury. Plaintiff testified that some time afterward he went to Dr. Cantrell to be examined. "When he told me I had an open ring, I couldn't believe it, because I knew nothing about it." We hold that there is no reversible error in this ruling.

[5] The eighth assignment complains of the court for not permitting the witness Brandon to answer the following question:

"Q. Did he not tell you he didn't think it was serious?" (meaning the injury he received and had complained of in his petition and at the

time when they were down at the place on the 11th of March, at the time of the injury).

Objection was made that it was hearsay and self-serving. Counsel expected the witness to answer the question in the affirmative; that is, that he told Brandon of the injury and said that he did not believe that it was serious. The witness in relation to plaintiff being injured testified:

"He said he was hurting in his breast. He said it hurt him when he coughed. I inferred from that that it was in his breast where it hurt him. I cannot say that I heard him say he got hurt coming down, for I was not with him very much at first. I could not say that I learned while I was down there that he had gotten hurt somehow as he went down. I know he was making some complaint. I never noticed anything the matter with him from the way he was working."

Counsel for appellee objected to the language in parenthesis, meaning that the question was related to the injury mentioned in the petition. The testimony of Brandon is clear that he was talking about hurting in the breast and knew nothing about any other injury. Be this as it may, when all the testimony is considered we think the ruling, if error, is immaterial.

The ninth assignment of error complains of not being allowed to prove by witness Brandon wrecks had occurred at said place in the last year and two or three months. Objection was made that the question propounded does not confine itself to the time of the alleged accident or shortly before that and anything that has occurred within a year since that would not be admissible.

[6] We are unable to consider this assignment, as the bill of exception does not show what the answer would have been to the question, and therefore no injury is shown to appellant by the ruling of the court in not permitting the witness to answer.

The record shows that the verdict and judgment are fully supported by the evidence, and therefore the judgment is affirmed.

Affirmed.